**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4311-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AHMAD J. JOHNSON,

    Defendant-Appellant.

_____

> Argued January 29, 2020 – Decided February 10, 2020
>
> Before Judges Haas and Mayer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 06-10-1770.
>
> John Vincent Molitor argued the cause for appellant.
>
> Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the brief).

PER CURIAM

This post-conviction relief (PCR) case returns to us after remand proceedings directed by our previous opinion. See State v. Johnson ("Johnson II"), No. A-0032-16 (App. Div. Jan. 16, 2018).[1] As noted in that decision, we ordered the trial court to conduct "an evidentiary hearing on all of the assertions raised by defendant in his PCR petition" in order "to ferret out the facts and possible strategies underlying the actions of defendant's trial and appellate attorneys in connection with defendant's claims of ineffective assistance." Id. at 6.

On remand, the matter was assigned to Judge Mark J. Nelson, who held the hearing to address the issues identified in our decision in Johnson II. Defendant's trial and appellate attorneys testified at the hearing, as did defendant and three other witnesses. At the conclusion of the hearing, Judge Nelson denied defendant's petition for PCR, and fully explained the basis for his rulings in a comprehensive twenty-seven page written opinion containing his detailed findings of fact and conclusions of law.

Defendant appeals from the May 6, 2019 order memorializing the judge's decision. We affirm.

---

[1] We also incorporate herein the procedural history and facts set forth in our opinion on defendant's direct appeal. State v. Johnson, ("Johnson I"), No. A-6238-09 (App. Div. March 27, 2013), certif. denied, 216 N.J. 13 (2013).

A-4311-18T3

Defendant raised seven arguments on remand in support of his petition for PCR. The parties are fully familiar with Judge Nelson's thorough analysis of each of those issues and, therefore, we need only provide the highlights here.

First, defendant asserted that his trial attorney was ineffective because he failed to ensure that the trial judge abided by directives promulgated by the Administrative Office of the Courts for the conduct of jury selection, and his appellate attorney failed to raise this as an issue on direct appeal. However, Judge Nelson found that although not all of the procedures set forth in these directives were applied by the trial judge,[2] there was no evidence that a biased jury resulted from these inconsistencies. Thus, Judge Nelson concluded that defendant failed to satisfy the second prong of the two-prong test of Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a showing that defense counsel's performance was deficient and that, but for the deficient performance, the result would have been different.

Defendant next argued that his attorneys were ineffective because they did not assert that the jury was "tainted" by the inclusion of a juror who told the trial judge he was familiar with one of the witnesses for the State. However, when

---

[2] For example, the judge read the list of potential witnesses to the jurors, but did not give them a written list of these individuals, and asked the jurors to "tell us something about yourself," instead of reading them the biographical question.

3

the judge questioned this juror, he admitted he did not know the State's witness by name and stated he could be fair and impartial and follow the court's instructions.  Under these circumstances, Judge Nelson concluded that defendant failed to meet either of the Strickland prongs.

In his third argument, defendant asserted that his attorneys provided poor representation because his trial counsel did not object when a detective testified he received information indicating that the car defendant hijacked from the victim he later murdered might have been used in a shooting, and his appellate attorney did not raise a Confrontation Clause claim on appeal based on the admission of this evidence.  However, because other witnesses provided this same information to the jury based on their first-hand accounts, and defendant had the full opportunity to cross-examine these witnesses, Judge Nelson found there was no viable Confrontation Clause issue that could have been raised at trial or on appeal.

Fourth, defendant argues that his attorneys were ineffective because they failed to argue that a cross-racial identification charge should have been given to the jury.  However, we held in Johnson I that the trial judge's instructions to the jury were proper under the pre-Henderson[3] out-of-court identification rules.

---

[3]  State v. Henderson, 208 N.J. 208 (2011).

(slip op. at 28-29). Therefore, defendant's present claim was barred by Rule 3:22-5, which prevents a defendant from raising an argument on a petition for PCR where there has been "[a] prior adjudication on the merits[.]"

In any event, the eyewitness's cross-racial identification of defendant in this case was corroborated by other evidence presented at the trial, including defendant's own admissions to another witness concerning his involvement in the shooting. See State v. Cromedy, 158 N.J. 112, 198-99 (1999) (holding, prior to Henderson, that cross-racial identification charges should be given only when the identification is not corroborated by other evidence giving it independent reliability). Thus, Judge Nelson found that a cross-identification instruction was not necessary and, accordingly, defendant's attorneys were not ineffective for failing to raise this issue.

Defendant next argued his trial attorney was "disloyal" to him because he was overheard talking to two assistant prosecutors about a rumor that defendant allegedly threatened to harm him and, based on this conversation, the attorney might not have worked diligently on his behalf. After hearing the testimony of the attorney and defendant, Judge Nelson found that defense counsel "brushed off" the rumor as soon as he heard it, saying "it was just some s[c]uttlebutt from the jail that people say and it had no bearing on him or the trial." The judge

found that the attorney's statement that the incident had no impact on his relationship with defendant was credible and, therefore, the judge rejected defendant's claim on this point.

In his sixth argument on remand, defendant asserted that his attorney should have called three witnesses who stated they saw a man running away after the murder. Prior to the hearing, defendant alleged that if the witnesses had been called to testify, they would have aided him in his claim of third-party guilt. Judge Nelson heard the testimony of each of these witnesses and concurred with defense counsel's credible assertion that the witnesses had limited knowledge of the events they allegedly perceived, contradicted themselves during their testimony, and were unable to adequately describe what they saw due to how dark it was on the street that night. Under these circumstances, the judge concluded that defendant's attorney made a proper tactical decision to refrain from calling these witnesses, whose hazy accounts would have been further damaged on cross-examination. Therefore, Judge Nelson found that defendant did not meet either prong of the Strickland test.

Finally, defendant argued that his trial attorney failed to keep him apprised of what transpired during sidebar conferences after his listening device failed. However, Judge Nelson found that defense counsel's testimony that he "used the

6

lawyer-shuttle system to speak with his client" was credible. Therefore, the judge rejected defendant's claim that he received ineffective assistance on this score.

On appeal, defendant raises the same seven arguments he unsuccessfully pressed before Judge Nelson. Thus, defendant asserts:

POINT I

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO FIND DEFENDANT'S TRIAL AND APPELLATE ATTORNEYS' FAILURES TO CHALLENGE THE NUMEROUS INTENTIONAL VIOLATIONS OF THE LAW GOVERNING JURY SELECTION DID NOT CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL.

POINT II

THIS COURT SHOULD REVERSE THE PCR JUDGE'S DECISION TO FIND THERE WAS NO BASIS FOR DEFENDANT'S TRIAL AND APPELLATE COUNSEL TO CHALLENGE POTENTIAL JURY TAINT BECAUSE THE TRIAL COURT ADMITTED A JUROR'S FAMILIARITY WITH ONE OF THE STATE'S WITNESSES RAISED THE SPECTER OF JURY TAINT AND THE TRIAL COURT DID NOT COMPLY WITH THE SUPREME COURT'S AND APPELLATE DIVISION'S DECISIONS MANDATING HOW A JUDGE MUST ADDRESS POTENTIAL JURY TAINT.

POINT III

THIS COURT SHOULD REVERSE THE PCR
JUDGE'S DECISION TO FIND DEFENDANT'S
TRIAL AND APPELLATE COUNSEL WERE NOT
INEFFECTIVE WHEN THEY DID NOT RAISE THE
INTENTIONAL VIOLATIONS OF DEFENDANT'S
SIXTH AMENDMENT RIGHT TO CONFRONT THE
WITNESSES AGAINST HIM.

POINT IV

THIS COURT SHOULD REVERSE THE PCR
JUDGE'S DECISION TO FIND THERE WAS NO
BASIS TO REQUEST A CROSS-RACIAL
IDENTIFICATION CHARGE BECAUSE THE PCR
JUDGE DID NOT CONSIDER THE PIVOTAL CASE
UPON WHICH DEFENDANT'S ARGUMENTS
RESTS.

POINT V

THIS COURT SHOULD REVERSE THE PCR
JUDGE'S DECISION TO DISREGARD AND
IGNORE NEWLY DISCOVERED EVIDENCE OF
DEFENDANT'S TRIAL COUNSEL'S DISLOYALTY.

POINT VI

THE PCR JUDGE'S DECISION TO DISCOUNT
DEFENDANT'S WITNESSES' TESTIMONY WAS
UNFAIR BECAUSE THE WITNESSES WERE
UNBIASED AND HONEST AND THEIR
TESTIMONY IMPLICATED A PRIME SUSPECT
WHOM THE POLICE INTERVIEWED.

POINT VII

THIS COURT SHOULD REVERSE THE PCR
JUDGE'S DECISION TO HOLD DEFENDANT WAS

8

NOT EXCLUDED FROM SIDEBAR CONFERENCES BECAUSE THE RECORD DOES NOT SUPPORT THE DEFENDANT'S TRIAL COUNSEL'S TESTIMONY THAT HE USED THE LAWYER-SHUTTLE SYSTEM.

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013); State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694.

There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Because prejudice is not presumed, Fritz, 105 N.J. at 52, a defendant must demonstrate with "reasonable probability" that the result would have been different had he received proper advice from his trial attorney. Strickland, 466 U.S. at 694.

Moreover, the acts or omissions of counsel of which a defendant complains must amount to more than mere tactical strategy. Id. at 689. As the Supreme Court observed in Strickland,

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
> [Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).]

Where, as here, the judge conducts an evidentiary hearing, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15).

Having considered defendant's present contentions in light of the record and these well-established principles, we discern no basis for disturbing Judge Nelson's reasoned determination that defendant failed to satisfy the Strickland test with regard to any of his seven contentions. Accordingly, we affirm the judge's denial of defendant's PCR petition substantially for the reasons detailed at length in his comprehensive written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4311-18T3